United States District Court
Northern District of Indiana
Hammond Division

Ernest Albiero,

    Plaintiff,

v.

Case No. 4:11-CV-15-JVB

The Town of Goodland, Indiana,
an Indiana Municipal Corporation, et. al.,

    Defendants.

**OPINION AND ORDER**

**A.    Background**

On February 16, 2011, Plaintiff Ernest Albiero sued the Town of Goodland, Indiana, and Jason Smiley alleging, among other things, that Defendants illegally searched Plaintiff's property located at 302 North Newton Street and 317 South Newton Street in the Town of Goodland in violation of the Fourth Amendment to the United States Constitution. Specifically, Plaintiff alleges that Defendant Smiley's search of Plaintiff's properties was not conducted pursuant to a valid warrant.

On August 18, 2011, Defendants moved for summary judgment alleging that no illegal search occurred as a matter of law. Plaintiff filed his response on September 14, 2011, and Defendants replied on September 21, 2011. In connection with Defendants' Motion for Summary Judgment, Defendants moved to strike the affidavit of Jerry Berard (DE 115), and Plaintiff filed a motion for sanctions (DE 103).

For the following reasons, Plaintiff's Motion for Sanctions is denied, Defendants' Motion to Strike the Affidavit of Jerry Berard is granted, and Defendants' Motion for Summary Judgment is granted in part and denied in part.

**B.      Summary Judgment Standard**

A motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party supports its motion for summary judgment with affidavits or other materials, it thereby shifts to the non-moving party the burden of showing that an issue of material fact exists. *Keri v. Bd. of Trust. of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006).

Rule 56(e) specifies that once a properly supported motion for summary judgment is made, "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts to establish that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

In viewing the facts presented on a motion for summary judgment, a court must construe

all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *Keri*, 458 F.3d at 628. A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249–50 (1986).

**C.     Defendants' Motion to Strike**

The Court grants the Defendants' Motion to Strike the Affidavit of Jerry Berard (DE 115). To support Plaintiff's response to Defendants' Motion for Summary Judgment, Plaintiff relies, in part, on the Affidavit of Jerry Berard dated August 27, 2011. Berard's affidavit states only that an unidentified third party attributed out of court statements to Smiley:

> 4.     While there an unnamed female inspector told me and Mr. Albiero that [s]he herself as a public health inspector and Jason Smiley did in fact inspect Mr. Albiero's property, in July of 2010, and did so without a warrant.
>
> 5.     That she said to me that she and Jason looked into the windows close up, walked around the property tried the doors by knocking and doorknob.
>
> 6.     That she said she and Jason even found a bucket in the back yard[,] which she said someone had defecated in.
>
> 7.     She admitted that she was aware of the need of a search warrant and informed Jason Smiley of this, however she went along with Jason Smiley as he assured her that it was [his] jurisdiction.

(Berard Aff. ¶ 4–7.)

Berard's affidavit contains statements, which are inadmissible hearsay and thus may not be considered for purposes of the motion for summary judgment. Federal Rule of Civil Procedure 56(c)(4) requires affidavits supporting a motion to set out facts that would be admissible in evidence:

3

> An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence and show that the affiant or declarant is competent to testify on matters stated.

"It is the policy of Rule 56 to allow the affidavit to contain evidentiary matter, which if the affiant were in court and testifying on the witness stand, would be admissible as part of his testimony." *Am. Security Co. v. Hamilton Glass Co.*, 254 F.2d 889, 893 (7th Cir. 1958).

In this case, Berard's statements in paragraphs 4 through 7 of his affidavit constitute inadmissible hearsay. As a result, these statements may not be considered for purposes of this motion for summary judgment.

Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered to prove the truth of the matter asserted in the statement. Fed. R. Evid. 801(c). A statement can include nonverbal conduct of a person, if the person intends it as an assertion. Fed. R. Evid. 801(a). Federal Rule of Evidence 805 similarly bars an out-of-court statement that itself contains another out-of-court statement, unless each level of statements conforms with some exception to the hearsay rule. Fed. R. Evid. 805. In his affidavit, Jerry Berard states only that "an unnamed female inspector" made an out-of-court statement to both Berard and Plaintiff offered to prove that Smiley conducted an unlawful search of Plaintiff's properties. This testimony is hearsay within hearsay that does not meet any hearsay exception or exemption and thus is inadmissible under Rule 56(c)(4).

**D.     Motion for Sanctions**

The Court denies Plaintiff's Motion for Sanctions (DE 103). Plaintiff alleges that Defendants' Reply in Support of their Motion for Summary Judgment (DE 58) was a "frivolous document" and thus Rule 11 sanctions are warranted. To determine whether Rule 11 sanctions are warranted, the court must "undertake an objective inquiry into whether the party or his counsel should have known that his position was groundless." *CUNA Mut. Ins. Soc'y. v. Office & Prof'l Emp. Int'l Union, Local 39,* 443 F.3d 556, 560 (7th Cir. 2006).

Rule 11 provides two grounds for the imposition of sanctions. The first is included in the "frivolous clause," and the second is in the "improper purpose clause." *Fred A. Smith Lumber Co. v. Edidin,* 845 F.2d 750, 752 (7th Cir. 1988). Under the frivolous clause, a party, or the attorney representing the party, must only make a reasonable inquiry into the facts and law relevant to any pleading. The improper purpose clause simply ensures that a motion, pleading, or reply will not be used for purposes of delay, harassment, or increasing costs of litigation. Fed. R. Civ. P. 11.

In this case, Defendants' Reply filed in Support of their Motion for Summary Judgment simply reinforced or clarified points already made in the Motion for Summary Judgment. Additionally, Defendants' Reply filed in Support of the Motion for Summary Judgment is specifically authorized by Rule 56.1(c) of the Local Rules of the United States District Court for the Northern District of Indiana. The filing of a document, which is specifically authorized and allowed by the rules cannot be said to have been used for the purposes of causing delay, harassment, or increasing the costs of litigation.

Consequently, an award of sanctions is not warranted in this case.

### E. Material Facts

As relevant to Plaintiff's claims, the facts, taken in the light most favorable to Plaintiff are as follows:

Plaintiff owns two parcels of property, a residential property at 302 North Newton Street and a commercial property at 317 South Newton Street in the Town of Goodland, Indiana ("Plaintiff's properties") (Tr. 41). In July 2010, the Town of Goodland received complaints regarding the condition of Plaintiff's properties (Tr. 41). Following these complaints, Defendant Smiley, the Unsafe Building Inspector for the Town assessed the exterior of Plaintiff's property at 302 North Newton (Tr. 64–65, 70).

Smiley observed severe foundational problems with the building including unfinished walls, dislodged bricks, spray foam and rags used in lieu of mortar in several areas to fill cracks, unfinished walls with stud exposures to outside elements and exposed electrical wires (Tr. 43–45). He also saw trash and debris surrounding the property. *Id.* Smiley conducted his exterior observations of the premises from the city street, adjacent vacant property, and also from a neighbor's driveway (Tr. 64–65).

The Affidavit of Michael Van Etten confirms that in July 2010, Smiley observed Plaintiff's property at 302 North Newton (Van Etten Aff. ¶ 4). While sitting in his vehicle on a side street, Van Etten saw all of Smiley's actions (Van Etten Aff. ¶ 6). Van Etten testified that Smiley walked to the front door of Plaintiff's property and knocked. Smiley then tried to open the door and found that it was secure. Van Etten also stated that Smiley walked around the building, looking into the windows as he went. Van Etten described that Smiley went to the back door, knocked on it, and found it secured. Finally, Van Etten noted that Smiley looked

under the rear porch of the residence and at another location on the property (Van Etten Aff. ¶ 7–10). In its entirety, Van Etten's testimony confirms that Smiley never entered Plaintiff's premises; rather, Smiley conducted all of his observations from areas open to the general public.

Following his observations, Smiley made his initial assessment and sent a letter to Plaintiff on July 20, 2010, for consent to inspect the property to determine whether the structure was an unsafe building under the Indiana Unsafe Building Law (DE 1; Ex. 4). Smiley informed Plaintiff that if Plaintiff did not consent to the inspection, he would seek a warrant from the Newton Circuit Court pursuant to Indiana Code Section 36-7-9-16 and then forcibly enter the property to complete his inspection (Tr. 42). Plaintiff responded in a letter dated July 29, 2010, and did not consent to the inspection (DE 134; Ex. 2). In the same letter, Plaintiff informed Smiley that he would be out of the country during September and October 2010, and stated that he would return sometime around the beginning of November (DE 134; Ex. 2).

Because Plaintiff did not consent to the inspection, Smiley petitioned the Newton Circuit Court for the warrants authorizing him to inspect Plaintiff's properties (Tr. 42). Judge Jeryl F. Leach signed and granted the Inspection Warrants on September 30, 2010 (DE 134; Ex. 3). It is undisputed that Smiley served the warrants by leaving a copy at the premises (Tr. 70). Smiley also mailed a copy of the warrant to Plaintiff's last known address, an out-of-state post office box, on October 1, 2010.

Acting pursuant to these warrants, Smiley inspected Plaintiff's properties. At the conclusion of his inspection, Smiley issued an Unsafe Building Order dated November 15, 2010, requiring Plaintiff to remove the unsafe buildings (Tr. 62).

**F. Discussion**

Plaintiff first argues that, in July 2010, Smiley searched Plaintiff's property at 302 North Newton without a warrant, in violation of the Fourth Amendment. Plaintiff also alleges that later, Smiley inspected Plaintiff's properties at 302 North Newton and 317 South Newton pursuant to an invalid warrant, thereby violating again Plaintiff's Fourth Amendment rights to be free from unreasonable searches and seizures. Plaintiff contends that Smiley's search of Plaintiff's properties was not conducted pursuant to a valid warrant because the warrants were not personally served within the meaning of Indiana Code Section 36-7-9-16. Plaintiff argues that Smiley's actions of leaving copies of the warrants at Plaintiff's property and mailing them to Plaintiff are insufficient to constitute personal service under Indiana Code Section 36-7-9-16.

**(1)** *Fourth Amendment*

(a) *Smiley's Initial Observation*

Plaintiff first argues that Smiley's initial observation of his property at 302 North Newton violated Plaintiff's Fourth Amendment rights because it was not conducted pursuant to a warrant. The Court finds that Smiley did not violate Plaintiff's Fourth Amendment rights when he initially observed Plaintiff's property at 302 North Newton.

The Fourth Amendment protects "the right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. In determining whether a plaintiff suffered a violation of a constitutional right under the Fourth Amendment, the Court must analyze whether the Smiley's conduct was "reasonable" within the meaning of Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 395–96 (1989).

Although the Fourth Amendment protects persons against unreasonable government searches and seizures, there is no Fourth Amendment protection against observation by public officials of what is observable by the general public. *Marshall v. Barlow's, Inc*., 436 U.S. 307, 315 (1978). "If an article is already in plain view, neither its observation nor its seizure would involve any invasion of privacy." *Horton v. California,* 496 U.S. 128, 133 (1990). Furthermore, the mere fact that the area subjected to the observation is within the curtilage, does not transform a warrantless observation into an unconstitutional search. *California v. Ciraolo*, 476 U.S. 207, 213 (1986).

Defendants are correct that Smiley's initial observation of Plaintiff's property at 302 North Newton did not violate Plaintiff's Fourth Amendment rights. Smiley's testimony establishes, and Plaintiff's witness Michael Van Etten's affidavit confirms, that in July 2010, Smiley entered upon and observed only areas of Plaintiff's property which were open to the public, areas in which Plaintiff had no reasonable expectation of privacy.

Specifically, while sitting in his car on a side street, Van Etten saw Smiley walk to the front door of Plaintiff's property and knock. Next, Smiley tried to open the door and found that it was secure. Smiley walked around the building, looking into the windows as he went. Smiley went to the back door, knocked on it, and found it secured. Finally, Smiley looked under the rear porch of the residence and at another location on the property (Van Etten Aff. ¶ 7–10). Van Etten's testimony confirms that Smiley never entered Plaintiff's building; rather, Smiley visually conducted all observations from areas that were easily accessible and open to the general public. He did not stray into any area from which the general public was excluded. Furthermore, even if Smiley trespassed on Plaintiff's property, the Seventh Circuit has recognized that a trespass does not itself constitute an illegal search. *See United States v. Tolar*, 268 F.3d 530, 532 (7th Cir.

9

2001) As a result, Plaintiff's Fourth Amendment rights were not violated when Defendant Smiley initially observed Plaintiff's premises at 302 North Newton. Therefore, the Court grants Defendants' Motion for Summary Judgment on this issue.

(b)     *Validity of the Inspection Warrant*

In addition to arguing that Smiley's initial search of Plaintiff's 302 North Newton property violated Plaintiff's Fourth Amendment rights, Plaintiff also contends that Smiley's inspection of the properties conducted pursuant to the Inspection Warrants was unreasonable. Plaintiff contends that the Inspection Warrants were invalid because they were not properly served on Plaintiff.

Warrantless searches are per se unreasonable within the meaning of the Fourth Amendment absent exigent circumstances. *Horton v. California,* 496 U.S. 128, 143–44 (1990). A private property may not be entered to search or effect a seizure without a warrant. *Soldal v. Cook Cnty*, 506 U.S. 56 (1992). In this case, if Smiley's search of Plaintiff's properties were conducted pursuant to a valid warrant, Plaintiff's Fourth Amendment rights were not violated. Therefore, this Court must determine whether Smiley's search was conducted pursuant to a validly executed warrant.

Indiana Code Section 36-7-9-16 governs the issuances of proper warrants in this case. This section provides that, if an owner of a structure or building refuses inspection, the inspection officer may obtain an inspection warrant in order to determine if the building is unsafe:

> (a) If the owners or those in possession of a building refuse inspection, an inspection officer of the enforcement authority may obtain an inspection warrant from any court of record in the county in which the building is located in order to determine if the building is an unsafe building . . .

> . . .
>
> (c) A warrant issued under this section is valid for only forty-eight (48) hours after its issuance, must be *personally served* upon the owner or possessor of the building, and must be returned within seventy-two (72) hours.

*Id.* (emphasis added).

It is undisputed that Smiley served the warrants by leaving them at Plaintiff's property and by mailing them to Plaintiff. However, because Indiana Code Section 36-7-9-16(c) requires that a warrant must be "personally served upon the owner or possessor of the building," the validity of the warrant hinges on whether Smiley's service constituted personal service.

Plaintiff and Defendants concede that Indiana Code Section 36-7-9-16 does not define the term "personally served." Plaintiff contends that Smiley did not personally serve the warrants as required under the statute when he left them at Plaintiff's properties and mailed them to Plaintiff. Rather, Plaintiff argues that "personally served" means to physically serve the individual in person. On the other hand, Defendants argue that such service is sufficient as a matter of law.

Defendants argue that to ascertain the meaning of "personally serve," the Court must apply the rules of statutory interpretation. Defendants contend that, under Indiana law, the principle rule of statutory interpretation is that the Court must construe two pieces of legislation that apply to the same subject matter as harmoniously as possible. *McCabe v. Comm'n. Dept. of Ins.*, 949 N.E.2d 816, 820 (Ind. 2011). Defendants argue that because Indiana Code Section 36-7-9-16 does not define "personally serve," the Court must look to the remainder of the Indiana Unsafe Building Law to ascertain the meaning of "personally serve." Under the Indiana Unsafe Building Law, the only other section that discusses personal service is Indiana Code Section 36-7-9-25 which specifies four methods for serving notices:

(a) Notice of orders, notice of continued hearings without a specified date, notice of a statement that public bids are to be let, and notice of claims for payment must be given by:

(1) sending a copy of the order or statement by registered or certified mail to the residence or place of business or employment of the person to be notified . . . .;

(2) *delivering a copy of the order or statement personally to the person to be notified;*

(3) leaving a copy of the order or statement at the dwelling or usual place of abode of the person to be notified and sending by first class mail a copy of the order or statement to the last known address of the person to be notified; or

(4) sending a copy of the order or statement by first class mail to the last known address of the person to be notified.

*Id.* (emphasis added).

Consequently, Defendants argue that, to harmonize the requirement that a warrant be "personally served" on the owner or possessor of a building under Indiana Code Section 36-7-9-16 with the remaining sections of the Indiana Unsafe Building Law, the Court should hold that leaving a copy of the order or statement at the premises and sending a copy by first class mail to Plaintiff's out-of-state post office box was, indeed, personal service.

Defendants' argument is misplaced. The primary rule of statutory construction is that all words must be given their "plain and ordinary meaning unless otherwise indicated by statute." *Chambliss v. State*, 746 N.E.2d 73, 77 (Ind. 2001). In this case, the statute is clear: "A warrant issued under this section is valid for only forty-eight (48) hours after its issuance, must be *personally served* upon the owner or possessor of the building, and must be returned within seventy-two (72) hours." Ind. Code § 36-7-9-16. Indeed, when examining Indiana Code Section 36-7-9-16(c) in light of what is provided in Indiana Code Section 36-7-9-25, it is clear that to effectuate personal service in this case, Smiley had to physically serve Plaintiff in person.

Indiana Code Section 36-7-9-25(a) lists four ways that service may be accomplished for "[n]otice of orders, notice of continued hearings without a specified date, notice of a statement that public bids are to be let, and notice of claims for payment." *Id.* However, unlike Indiana Code Section 36-7-9-25, which lists out four ways that service may be effectuated—one of which is through *personally serving* the individual—Indiana Code Section 36-7-9-16(c) provides only that an individual must be "personally served." It does not describe that service may be completed in any of the other ways listed in Indiana Code Section 36-7-9-25(a). To find that "personally serve" under Indiana Code Section 36-7-9-16(c) allows service to be effectuated by any of the four ways provided in Indiana Code Section 36-7-9-25, would make it redundant for Indiana Code Section 36-7-9-25 to list four various ways of effectuating service, one of which is through *personally serving* the individual. As a result, this Court finds that Defendant must physically serve the warrant on Plaintiff under Indiana Code Section 36-7-9-16(c).

Although the relevant statute provides that Plaintiff must be personally served, Defendants argue that personal service in this case, in the context of delivering the inspection warrant to Plaintiff in person, was made problematic by the totality of the circumstances. To support this position, Defendants argue that the buildings were abandoned and that the only address for the Plaintiff was an out-of-state post office box (DE 134; Ex. 1). Defendants also note that Plaintiff had advised Smiley that he would be out of the country at the time the inspection warrants were issued (DE 134; Ex. 2). In essence, Defendants argue that exigent circumstances existed for the search of the properties. This is a new argument and one best left for the jury. Consequently, this Court finds that Smiley's inspection of Plaintiff's property was not conducted pursuant to a valid warrant, as it was not personally served on Plaintiff. Therefore, as to this issue, the Court denies Defendants' Motion for Summary Judgment.

(c)     *The Town of Goodland's Liability*

Count III of Plaintiff's complaint alleges that the Town of Goodland may be held liable under § 1983 for the actions of Defendant Smiley, under a respondeat superior theory of liability. However, the Town cannot be held liable on the basis of respondeat superior stemming from the actions of Defendant Smiley.[1] Rather, a municipality can be liable under § 1983 only if the municipality itself, through a policy or custom, deprives someone of his or her constitutional rights. *Monell v. Dept. of Soc. Servs. of the City of N.Y.*, 436 U.S. 658, 694 (1978).

In this case, Plaintiff has failed to raise a genuine issue of material fact to support that the Town may be held liable under § 1983. Aside from alleging that the Town may be held liable on a theory of respondeat superior, which it cannot, Plaintiff contends that the Town may be held liable for its failure to train Defendant Smiley. However, Plaintiff only alleges that, "Smiley has no formal or informal training as a building inspector, and that this is a deliberate and conscious choice [by the Town]" (Pl.'s Compl. ¶ 17). The bare assertion that Defendants failed to provide adequate training and the mere fact that Plaintiff is alleged to have suffered constitutional injury is not enough to establish a genuine dispute of material fact regarding Town's liability under § 1983. Moreover, Smiley has received formal training regarding his job duties as Building Inspector. Smiley stated that he goes to "classes on a monthly basis with the state" that are offered by the State of Indiana where he learns about various types of residential, commercial and Indiana building codes (Tr. 26). Plaintiff's conclusory allegation of the Town's failure to train Smiley is not enough to raise a genuine issue of material fact to survive summary judgment as to the Town's liability under § 1983.

---

[1] The Court is puzzled as to why Defendants' counsel treats the Town of Goodland and Defendant Smiley as one and the same for liability purposes as to the illegal search and seizure claim presented in Count III of Plaintiff's Complaint.

## F. Conclusion

The Court:

- Grants the Defendants' Motion to Strike (DE 115).

- Denies Plaintiff's Motion for Sanctions (DE 103).

- Grants in part and denies in part Defendants' Motion for Summary Judgment (DE 58).

SO ORDERED on January 3, 2012.

  S/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN
UNITED STATES DISTRICT JUDGE